In re:

|  |  |
|---|---|
| **All-City Towing LLC,**[1] | **Case No. 26-20523-rmb** |
| **Bret's Towing LLC,** | **Case No. 26-20524-rmb** |
|  | **Chapter 11 Proceedings** |
|  | **(Motion for Joint** |
|  | **Administration Pending)** |
| **Debtors.** |  |

### MOTION TO PAY PRE-PETITION WAGES WITH REQUEST FOR
### EXPEDITED HEARING ON OR BEFORE 3:00 P.M., FEBRUARY 4, 2026

All-City Towing LLC ("All-City") and Bret's Towing LLC ("Bret's Towing" and together with All-City the "Debtors"), move, pursuant to § 363(b)(1) and § 105 of the Bankruptcy Code, and the case law cited below, for (i) authority to pay pre-petition wages, together with related taxes and payroll deductions of approximately $94,000 (collectively, "Pre-Petition Wages"), (ii) an order directing Associated Bank (the "Bank") to maintain the Debtors' payroll and operating accounts to honor checks or fund transfer requests to pay these wage obligations (iii) waiving any stay of the order under Fed. R. Bankr. P. 6003(b) and 6004(h) (the "Motion") **with a request for an expedited hearing to be held on or before 3:00 P.M. February 4, 2026**. In support of this Motion, Debtors state:

### Jurisdiction

1.      The Debtors filed their chapter 11 cases on February 1, 2026. The Debtors

---

[1] The motion for joint administration has been filed in each of the affiliated debtors' cases. At the time this motion was filed, the Court had not granted it. The caption showing related debtors is being used to alert parties-in-interest that an identical motion is being filed in each case. The caption should not be construed that Court has approved the joint administration motion

continue to manage their businesses and affairs pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1344(a) and 157(a), and the order of reference filed in this district entered pursuant to § 157(a).

3.      Venue of this proceeding is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2). It concerns the administration of the Debtors' estates pursuant to 28 U.S.C. § 157(b)(2)(A).

**Background**

5.      The Debtors, together with their affiliates, operate auto repair, towing, and transportation businesses. All-City was purchased by Jeff Piller on February 1, 2011. At that time, the business consisted of a single tow truck and a dozen customers. Over the years, All-City grew its business to where it now employs 85 people. The business' headquarters and operations are located at 6422 WI-31 Racine, Wisconsin.

6.      The Debtors pay wages and other compensation to their employees on a weekly basis for the previous week, Monday through Sunday. The Debtors' gross payroll per pay period for all employees including wages, salaries, other forms of compensation, and related taxes and payroll deductions is approximately $90,000 to $100,000. The actual payroll fluctuates based upon employee hours, which depends on the time of the year and other variables. This is typical in the Debtors' industry. Attached to the Declaration of Jeffrey Piller is a payroll summary with an estimated total for the upcoming payroll of approximately $94,000.

7.      The Debtors typically pay regular employees primarily through automated transactions deposited directly into their personal bank accounts. Two of its employees receive

2

paychecks. The Debtors withhold the employee portion of all federal and state withholding taxes, employer's share of federal, state and local taxes, and deduct any voluntary and non-voluntary deductions, including benefits, child support, and garnishment before remitting the balance of any wages or salary to the employees.

8. All employees are employed by All-City. All-City pays the employees that work at Bret's Towing locations. The Debtors allocate a portion of the employee compensation to Bret's Towing and it either transfers funds to All-City or a journal entry is made to reflect the allocation of payroll to Bret's Towing. This is being done to allocate costs so that management can understand the profitability of each operating unit of the collective business enterprise.

9. The Debtors' pay period for their employees typically begins on a Monday and ends on a Sunday. Employee wages are paid by the following Thursday. The Debtors fund the direct deposit portion of the payroll on the day before the pay day, typically Wednesday. The Debtors intend to continue this pay cycle post-petition in the ordinary course of business.

10. Prior to the chapter 11 filings, the Debtors paid the payroll ending on January 25, 2026, on January 28. The Debtors filed their case on the last day of a pay period. The result is there is approximately 100% of the usual payroll that is "pre-petition," or approximately $94,000. There is also accrued vacation and other benefits.

11. As of the petition date of February 1, 2026, none of the employees that will be paid are owed more than $17,150, the priority cap amount under § 507(a)(4), even with accrued vacation and other benefits. Insiders, Mr. Piller and his spouse receive approximately $2,308, $1,924, respectively.

**Relief Requested**

12. The Debtors request authority to pay Pre-Petition Wages as they become due

3

provided that no employee will receive more than $17,150 in the aggregate. All payments to be made to or on behalf of employees pursuant to this motion shall reduce, dollar-for-dollar, each claim of an affected employee pursuant to §§ 507(a)(4) and 507(a)(5) of the Bankruptcy Code. The Debtors do not seek or request permission to pay accrued vacation to any employee who is terminated or who terminates his or her employment. The Debtors also do not seek to pay any severance to any employee.

### Legal Basis for Relief Requested

13.     The payment of Prepetition Wages is warranted pursuant to §§ 105(a), 363, 507(a)(4) and 541(d) of the Bankruptcy Code, and case law prevailing in this district and elsewhere.

14.     Pursuant to § 507(a)(4), employees are granted a priority claim for:

> ... [A]llowed unsecured claims, but only to the extent of $13,650 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for-
>
>> (A)   wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; ...

15.     In this case, the Prepetition Wages owing to or on account of any active employee will not exceed the sum of $17,150 allowable as a priority claim under § 507(a)(4). All payments will be credited as an advance payment to the recipients for their respective priority claims under § 507(a)(4). Therefore, the payment of the amounts pursuant to this Motion would not deplete assets otherwise available to creditors having a lower priority claim under a plan or other distribution in accordance with § 507.

16.     Section 54l(d) excludes, "…  property in which the debtor holds, as of the

4

commencement of the case, only legal title and not an equitable interest." Deductions, such as garnishments and support payments, fall within this § 541(d) definition, do not constitute property of the estate and should be paid to the appropriate third parties.

17.     After notice and a hearing, the debtor-in-possession, "... may use, sell, or lease, other than in the ordinary course of business, property of the estate." § 363(b)(l).

18.     Section 105(a), which codifies the equitable powers of bankruptcy courts, authorizes the Court to, "... issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]."

19.     Bankruptcy courts have the equitable power to authorize the payment of pre-petition claims where such payments are necessary to preserve the value of a debtor's business or assets, thereby facilitating the chapter 11 process. *See, e.g., Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.,* 106 U.S. 286, 311 (1882) (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership ...."); *Mich. Bureau of Workers' Disability Camp. v. Chateaugay Corp. (In re Chateaugay Corp.),* 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include authorizing a debtor to pay prepetition debts). As such, a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger,* 106 U.S. at 311).

20.     The values of the Debtors' estates are dependent upon its ability to continue as a going concern, including the maintenance of its workforce. Without continuing payments to the Debtors' employees, it is unlikely that the workforce would remain highly motivated to provide

5

quality service, if the employees would even remain in the Debtors' employ. Stating the obvious: ***damage to the Debtors' businesses would be irreparable.*** If payroll is not paid, employees would likely immediately leave the Debtors' employment. Jobs could not be performed. The Debtors would be unable to provide services to customers.

21.     A bankruptcy court's exercise of its authority under § 105(a) is appropriate to carry out specific statutory provisions of chapter 11, specifically §§ 363(b)(l), 1107(a) and 1108, which authorize a debtor-in-possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, courts have consistently held that a debtor-in-possession has a duty to protect and preserve the value of its assets, and prepetition claims may be paid if necessary to perform the debtor's duty.

22.     The Federal Rules of Bankruptcy Procedure confirm that the Court may authorize the post-petition satisfaction of prepetition claims by reference to these standards. The power is specifically provided for in the exception contained in Rule 6003(b), which provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding ... a motion to pay all or part of a claim that arose before the filing of the petition ...."  This rule provides that, where the failure to grant any such requested relief would result in immediate and irreparable harm to a debtor's estate, the Court may allow a debtor to pay (prior to the twenty-first day following the Petition Date) all or part of a prepetition claim.

23.     Employees are essential to operating a construction company, administering this case, and preserving the value of the Debtors' business assets.  Any delay or disruption in the payment of Pre-Petition Wages under these circumstances would damage the relationships with the employees and impair morale of the workforce at the very time when the dedication,

6

confidence and cooperation of the employees are most critical. There are no practical or legal alternatives to retention of the employees. As a result, the Debtors seek to use the payment of Pre-Petition Wages as an effort to garner post-petition services from their employees. Not doing so would substantially jeopardize the value of the Debtors' businesses.

24.     The Debtors respectfully submit that the payment of the Pre-Petition Wages, and use of vacation time and other usual benefits accompanying the Pre-Petitions Wages is essential to the success of the Debtors' chapter 11 cases, represents an exercise of the Debtors' sound business judgment, and is in the best interests of the Debtors' estates and stakeholders.

25.     The Debtors anticipate that is will have access to sufficient funds from their bank accounts to pay all Pre-Petition Wages to the extent described in this Motion as such amounts become due in the ordinary course of its business.

26.     Nothing contained in this motion is intended or should be construed as: (a) an admission as to the amount, validity or priority of any claim against a Debtor; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is a claim for Pre-Petition Wages; or (e) a request to assume an executory contact or unexpired lease pursuant to § 365.

**Request for Waiver of Stay**

27.     Pursuant to Fed. R. Bankr. P. 6003(b) and 6004(h), the Debtors seek immediate entry of an order granting the relief sought herein notwithstanding any stay of the effectiveness of such an order.

28.     No prior request for the relief sought in this Motion has been made to this or any other Court.

7

## Conclusion

Wherefore, the Debtors request that the Court (i) grant the motion; (ii) authorize the Debtors to pay Pre-Petition Wages in the amount of approximately $94,000 (which by definition include all associated taxes and withholdings); (iii) direct the bank that maintains the Debtors' payroll and operating accounts to honor checks or fund transfer requests to pay these wage obligations, (iv) waive any stay of the order under Fed. R. Bankr. P. 6003(b) and 6004(h); and (iv) grant such other and further relief as this Court deems just.

Dated: February 2, 2026.

*/s/ Evan P. Schmit*
Evan P. Schmit
Kerkman & Dunn

Proposed Attorneys for the Debtors

<u>P.O. Address</u>:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: eschmit@kerkmandunn.com